Robert Chaffin (Tex. SBN: 04057500)
  robert@chaffinlawfirm.com
THE CHAFFIN LAW FIRM
4265 San Felipe, Suite 1020
Houston, Texas 77027
Telephone: (713) 528-1000
 Facsimile: (713) 952-5972
(*To apply as counsel pro hac vice*)


Howard W. Rubinstein (Fla. SBN: 0104108)
  howardr@pdq.net
THE LAW OFFICES OF HOWARD W. RUBINSTEIN
PO Box 4839
Aspen, Colorado 81612
Telephone: (832) 715-2788
Facsimile: (561) 688-0630
(*To apply as counsel pro hac vice*)


Harold M. Hewell (Cal. SBN: 171210)
  hmhewell@hewell-lawfirm.com
HEWELL LAW FIRM
105 West F Street, Second Floor
San Diego, California 92101
Telephone: (619) 235-6854
Facsimile: (888) 298-0177

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KATIE LYNN BURLEY,** as an individual, and on behalf of all others similarly situated,<br><br>      *Plaintiff,*<br><br>*vs.*<br><br>**SUNNY DELIGHT BEVERAGES CO.,** an Ohio corporation,<br>      *Defendant.* | CASE: 4:10-cv-05796-SBA<br><br>JUDGE: Hon. Saundra Brown Armstrong<br><br>**FIRST AMENDED COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES**<br><br>*Class Action*<br><br>*Jury Trial Requested*<br><br>Complaint filed December 21, 2010 |

Plaintiff, Katie Lynn Burley, on behalf of herself and all others similarly situated, by and through counsel, files this First Amended Complaint pursuant to Section 1782(d) of California's Consumer Legal Remedies Act ("CLRA"), Civil Code §§1750 et seq., which provides that:

> An action for injunctive relief brought under the specific provisions of Section 1770 may be commenced without compliance with subdivision (a). Not less than 30 days after the commencement of an action for injunctive relief, and after compliance with subdivision (a), the consumer may amend his or her complaint without leave of court to include a request for damages. The appropriate provisions of subdivision (b) or (c) shall be applicable if the complaint for injunctive relief is amended to request damages.

Plaintiff also has amended the pleading to include depictions of the subject product labeling, add the words "and any subclasses" to paragraph 30, and to make minor editing and formatting changes. She alleges as set forth below.

## I. VENUE AND JURISDICTION

1.      This Court has jurisdiction over the subject matter presented by this First Amended Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the plaintiff class is a citizen of a state different from any Defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,000.00, exclusive of interest and costs. Plaintiff alleges that the total claims of the individual members of the Plaintiff Class in this action are in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. § 1332(d)(2), (5).

2.      As set forth below, Plaintiff is a citizen of California, and Defendant can be considered a citizen of Ohio. Therefore, diversity of citizenship exists under CAFA as required by 28 U.S.C. § 1332(d)(2)(A). Furthermore, Plaintiff alleges on information

and belief that more than two-thirds of all of the members of the proposed Plaintiff Class in the aggregate are citizens of a state other than California where this action is originally being filed, and that the total number of members of the proposed Plaintiff Class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).

3.    This Court has authority to exercise personal jurisdiction over Defendant because it has substantial contacts with and receives benefits and income from and through the State of California.

4.    Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(a) because, as set forth below, Defendant conducts business in, and may be found in, this district, and Plaintiff purchased the subject product of this action in this judicial district.

5.    The "Declaration of Harold M. Hewell Pursuant to Civil Code §1780(c) of the Consumer Legal Remedies Act, Civil Code §§ 1750 et seq." regarding venue under the CLRA was previously filed in this action and is incorporated herein by reference.

## II. PARTIES

6.    Katie Lynn Burley is an individual who is a citizen of California who is more than 18 years of ages and resides in San Francisco within this Judicial District. She respectfully requests a jury trial on damage claims.

7.    Sunny Delight Beverages Company ("Sunny Delight," or "Defendant") is a corporation organized and existing under the laws of Ohio. It maintains its headquarters at 6000 Creek Road, Cincinnati, Ohio 45242. For purposes of diversity jurisdiction, Sunny Delight can be considered a citizen of Ohio. Sunny Delight markets and sells through retailers various fruit-flavored beverages. Among those products, is a brand of fruit beverages named "Fruit$_2$O® essentials™" ("Product"). Defendant conducts business in this jurisdiction and in this judicial district by means of its advertising and through the distributors and retailers that deliver and sell the Product to consumers.

## III. GENERAL ALLEGATIONS

8.    All allegations herein are based on information and belief and/or are likely

to have evidentiary support after reasonable opportunity for further investigation and discovery.

9.    Plaintiff alleges that, at all times relevant herein, Sunny Delight and its subsidiaries, affiliates, and other related entities, as well as their respective employees, were the agents, servants and employees of Sunny Delight, and at all times relevant herein, each was acting within the purpose and scope of that agency and employment. Plaintiff further alleges on information and belief that at all times relevant herein, the distributors and retailers who delivered and sold the Product, as well as their respective employees, also were Sunny Delight's agents, servants and employees, and at all times herein, each was acting within the purpose and scope of that agency and employment.

10.    Additionally, Plaintiff alleges that, in committing the wrongful acts alleged herein, Sunny Delight, in concert with its subsidiaries, affiliates, and/or other related entities and their respective employees, planned, participated in and furthered a common scheme to induce members of the public to purchase the Product by means of false, misleading, deceptive and fraudulent representations, and that Sunny Delight participated in the making of such representations in that it disseminated those misrepresentations and/or caused them to be disseminated.

11.    Whenever reference in this First Amended Complaint is made to any act by Sunny Delight or its subsidiaries, affiliates, distributors, retailers and other related entities, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of Sunny Delight committed, knew of, performed, authorized, ratified and/or directed that act or transaction on behalf of Sunny Delight while actively engaged in the scope of their Duties.

## IV. FACTUAL ALLEGATIONS

12.    At all times relevant herein, Sunny Delight marketed, advertised and, through distributors and retailers, sold the Product in six fruit flavors featuring such fruit-based names as "Cranberry Raspberry," "Strawberry Kiwi," "Peach Mango," "Citrus," "Blueberry Pomegranate," and "Cherry Acai." The Principal Display Panel ("PDP") of

the Product labeling featured "images of the fruits along with the claim '5 [or 4] nutrients equal to 2 servings of fruit.' The side panel of the product label identifies four or five 'key nutrients' found in two servings of the fruits."[1]

13.   Campbell Soup Company ("Campbell") challenged Sunny Delight's advertising representation for the Product to the National Advertising Division of the Council of Better Business Bureaus[2] ("NAD"). Campbell contended that, although Sunny Delight had fortified the Product with certain nutrients, the nutrient levels contained in the Product were, on the whole, significantly less than the levels found in the relevant fruit referred to in the Product variety names. Consequently, Campbell argued, any implied representation that drinking the Product offered nutritional benefits equivalent to eating two servings of the named fruit was misleading.[3]

---

[1] "NAD Recommends Sunny Delight Discontinue Certain Claims for Fruit2O Beverages, Following Campbell Challenge," *NAD® News,* June 23, 2010, http://www.nadreview.org/docView.aspx?DocumentID=8092&DocType=1, retrieved December 20, 2010. A true and correct copy of that press release is attached hereto as Exhibit A and incorporated by reference.

[2] The National Advertising Review Council (NARC) was formed in 1971 by the Association of National Advertisers, Inc. (ANA), the American Association of Advertising Agencies, Inc. (AAAA), the American Advertising Federation, Inc., (AAF), and the Council of Better Business Bureaus, Inc., (CBBB). Its purpose is to foster truth and accuracy in national advertising through voluntary self-regulation. NARC is the body that establishes the policies and procedures for the CBBB's National Advertising Division (NAD) and Children's Advertising Review Unit (CARU), as well as for the National Advertising Review Board (NARB) and the Electronic Retailing Self-Regulation Program (ERSP), NAD and CARU are the investigative arms of the advertising industry's voluntary self-regulation program. Their case work results from competitive challenges from other advertisers, and also from self-monitoring traditional and new media. The National Advertising Review Board (NARB), the appeals body, is a peer group from which ad-hoc panels are selected to adjudicate those cases that are not resolved at the NAD/CARU level. This unique, self-regulatory system is funded entirely by the business community; CARU is financed by the children's advertising industry, while NAD/NARC/NARB's sole source of funding is derived from membership fees paid to the CBBB, ERSP's funding is derived from membership in the Electronic Retailing Association. Id.

[3] Randy Shaheen and Danielle Garten, "Apples to Oranges: NAD Recommends Fruit2O





**Peach Mango[4]**     **All Six Flavors[5]**     **Cranberry Raspberry[6]**

Water Discontinue Certain Implied Nutrition Claims," *Consumer Advertising Law Blog,* July 14, 2010, http://www.consumeradvertisinglawblog.com/2010/07/apples-to-oranges-nad-recommends-fruit2o-water-discontinue-certain-implied-nutrition-claims-.html, retrieved December 20, 2010.

[4] http://www.google.com/imgres?imgurl=http://rebekahj81.com/reviews/wp-content/uploads/2009/08/PeachMango-200x300.jpg&imgrefurl=http://rebekahj81.com/reviews/2009/review-and-giveaway-fruit2o-essentials/%3Fwpmp_switcher%3Ddesktop&usg=_HHEEjhSg-mM3pdBbzcT3awYsjkQ=&h=300&w=200&sz=17&hl=en&start=28&zoom=1&tbnid=ZJMEixtQ4TebfM:&tbnh=131&tbnw=90&ei=1l7ZTYfsJYGisQOEnN2FDA&prev=/search%3Fq%3Dfruit2o%25C2%25AE%2Bessentials%26um%3D1%26hl%3Den%26sa%3DN%26rlz%3D1T4GGLL_enUS387US387%26biw%3D1371%26bih%3D733%26tbm%3Disch0%2C550&um=1&itbs=1&iact=hc&vpx=862&vpy=281&dur=796&hovh=240&hovw=160&tx=99&ty=154&sqi=2&page=2&ndsp=28&ved=1t:429,r:11,s:28&biw=1371&bih=733, retrieved May 22, 2011.

[5] http://www.google.com/imgres?imgurl=http://witwhimsy.files.wordpress.com/2009/09/fruit2o.jpg%3Fw%3D270&imgrefurl=http://witwhimsy.com/tag/fruit2oessentials/&usg=vMtsgkqCErT8xe4ZgtNDxq4Tuo=&h=299&w=270&sz=12&hl=en&start=0&zoom=1&tbnid=YpVn9xQXCRQZYM:&tbnh=140&tbnw=126&ei=9IDZTeyKFYO4sQOBxb2ODA&prev=/search%3Fq%3Dfruit2o%25C2%25AE%2Bessentials%26um%3D1%26hl%3Den%26sa%3DN%26rlz%3D1T4GGLL_enUS387US387%26biw%3D1575%26bih%3D733%26tbm%3Disch&um=1&itbs=1&iact=hc&vpx=461&vpy=364&dur=320&hovh=236&hovw=213&tx=92&ty=140&sqi=2&page=1&ndsp=33&ved=1t:429,r:19,s:0, retrieved May 22, 2011.

[6] http://www.google.com/imgres?imgurl=http://www.bevreview.com/wp-content/image_fruit2oessentials_cranberryraspberry1.jpg&imgrefurl=http://www.bevreview.co

14.     In its defense, Sunny Delight:

… asserted that it took care in creating the labels and advertisements to ensure that consumers understood not only which nutrients the water contains in amounts equal to two servings of the depicted fruit, but also to provide sufficient clarifying information so that reasonable consumers understand the limits of the water's nutritional contents.[7]

15.     Sunny Delight also pointed out that it had discontinued the print advertising containing the challenged claims for the Product, which NAD supported. However, NAD felt that the representations on the product labeling remained problematic.

16.     Sunny Delight had attempted to limit effect of the primary label claim by noting in other text that "the nutrients equal to two servings of fruit are 'key' nutrients." However, NAD noted that the claim, "equal to 2 servings of fruit" might reasonably lead consumers to believe that the fortified Product contained certain nutrients in amounts equal to that found in the corresponding fruit. Since this "implied message was not supported" NAD recommended that Sunny Delight cease making the "…equal to 2 servings of fruit" representation.[8]

17.     Additionally, NAD found that, in context, the phrase, "The wonders of fruit. The refreshment of water," contributed to the unsupported message that implied the Product was the nutritional equal of actual fruit servings. Accordingly, NAD

---

m/2009/07/28/review-fruit2o-essentials-cranberry-raspberry-water/&usg=qlYOlOZIS VNWxeT5PDoaRpFA4mc=&h=350&w=263&sz=39&hl=en&start=0&zoom=1&tbnid =OnKBATTJlHIayM:&tbnh=145&tbnw=112&ei=1l7ZTYfsJYGisQOEnN2FDA&pre v=/search%3Fq%3Dfruit2o%25C2%25AE%2Bessentials%26um%3D1%26hl%3Den%2 6sa%3DN%26rlz%3D1T4GGLL_enUS387US387%26biw%3D1371%26bih%3D733% 26tbm%3Disch&um=1&itbs=1&iact=hc&vpx=680&vpy=56&dur=2503&hovh=259& hovw=195&tx=110&ty=153&sqi=2&page=1&ndsp=28&ved=1t:429,r:3,s:0,   retrieved May 22, 2011.

[7] See Note 1.

[8] Id.

recommended that it be modified or discontinued.[9]

18.    Although Sunny Delight disputed certain findings by NAD, it issued a statement announcing that it had "made changes to its advertising campaign and will implement additional revisions, to the full extent possible, in any remaining advertising consistent with NAD's guidance."

19.    As a result of the misleading claims and representations referenced above, conveyed by Sunny Delight on its labeling and other aspects of its marketing campaign for the Product, Sunny Delight was been able to charge a price premium for the Product over other similar products that did not make such misleading claims.

20.    Plaintiff has purchased the Product at least twice since the fortified Product was introduced in June 2009, buying it at a Safeway located at 3350 Mission Street, San Francisco, California 94110. In doing so, she saw and relied on the misleading labeling claims referenced above. Those deceptive claims were material to her decision to purchase and use the Product for its intended purpose.

21.    Given the foregoing, Plaintiff contends that she has been misled by Defendant's labeling claims into purchasing and paying for a product that was not what it was represented to be, and that she has, as a direct result, suffered actual damages in that she has been deprived of the benefit of her bargain and has spent money purchasing the Product at a price premium when the Product actually had less value than was reflected in the price she paid for the Product. In fact, she would not have purchased the Product had she known the true facts about it.

### V. CLASS ALLEGATIONS

26.    Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this First Amended Complaint.

27.    Pursuant to California Civil Code §1781, California Code of Civil Procedure §382, and Federal Rule of Civil Procedure ("FRCP") 23, Plaintiff brings this

---

[9] Id.

class action and seeks certification of the claims and certain issues in this action on behalf of all persons who have purchased the Product for personal use during the Class Period ("Class"), which is defined as the period between the date Defendant first used the claims described above, as well as those similar to them, in the labeling of the Product, and the filing date of this First Amended Complaint.

28.     Defendant's practices and omissions were applied uniformly to all members of the Class, so that the questions of law and fact are common to all members of the Class. All members of the putative Class were and are similarly affected by having purchased and used the Product, and the relief sought herein is for the benefit of Plaintiff and members of the putative Class.

29.     Plaintiff is informed and believes, and on that basis alleges, that the Plaintiff Class is so numerous that joinder of all members would be impractical. Based on the annual sales of the Product and the popularity of the Product, it is apparent that the number of consumers of the Product would be so large as to make joinder impossible.

30.     Questions of law and fact common to the Plaintiff Class and any subclasses exist that predominate over questions affecting only individual members, including, inter alia:

        a.     Whether Defendant's practices and representations made in connection with the labeling, advertising, marketing, promotion and sales of the Product were deceptive, unlawful or unfair in any respect, thereby violating California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq.;

        b.     Whether Defendant's practices and representations made in connection with the labeling, advertising, marketing, promotion and sales of the Product were deceptive, unlawful or unfair in any respect, thereby violating California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 et seq.;

        c.     Whether Defendant's conduct in connection with the practices and

representations made in the labeling, advertising, marketing, promotion and sales of the Product breached express warranties with regard to the Product;

d.   Whether Defendant violated California's Consumer Legal Remedies Act ("CLRA"), California Civil Code § 1750, et seq., by the practices and representations made in connection with the labeling, advertising, marketing, promotion and sales of the Product within California.

e.   Whether Defendant's conduct as set forth above injured consumers and if so, the extent of the injury.

31.   The claims asserted by Plaintiff in this action are typical of the claims of the members of the Plaintiff Class, as the claims arise from the same course of conduct by Defendant, and the relief sought is common.

32.   Plaintiff will fairly and adequately represent and protect the interests of the members of the Plaintiff Class. Plaintiff has retained counsel competent and experienced in both consumer protection and class action litigation.

33.   Certification of this class action is appropriate under California Civil Code §1781, California Code of Civil Procedure §382, and FRCP 23 because the questions of law or fact common to the respective members of the Class predominate over questions of law or fact affecting only individual members. This predominance makes class litigation superior to any other method available for the fair and efficient adjudication of these claims. Absent a class action, it would be highly unlikely that the representative Plaintiff or any other members of the Class would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed expected recovery.

34.   Certification also is appropriate because Defendant acted, or refused to act, on grounds generally applicable to the Class, thereby making appropriate the relief sought on behalf of the Class as a whole. Further, given the large number of consumers of

the Product, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications.

35.     A class action is a fair and appropriate method for the adjudication of the controversy, in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense and burden on the courts that individual actions would engender.

36.     The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that might be argued with regard to the management of this class action.

## VI. FIRST CAUSE OF ACTION:

## VIOLATIONS OF BUS & PROF. CODE § 17200 ET SEQ.

37.     Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this First Amended Complaint.

38.     This cause of action is brought on behalf of Plaintiff and members of the general public pursuant to Cal. Bus. & Prof. Code § 17200 et seq., which provides that "unfair competition shall mean and include any unlawful, unfair or deceptive business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter I (commencing with Section 17500) as Part 3 of Division 7 of the Business and Professions Code."

39.     Plaintiff alleges on information and belief that Defendant committed unfair business acts and/or practices. The utility of Defendant's practices related to the deceptive labeling of the Product is negligible, if any, when weighed against the harm to the general public, Plaintiff and members of the Class.

40.     The harmful impact upon members of the general public and the Class who purchased and used the Product outweighs any reasons or justifications by

Defendant for the deceptive labeling practices employed to sell the Product as described herein.

41.     Defendant had an improper motive (profit before accurate marketing) in its practices related to the deceptive labeling of the Product, as set forth above. The use of such unfair business acts and practices was and is under the sole control of Defendant, and was deceptively hidden from members of the general public in Defendant's labeling, advertising, and/or marketing of the Product.

42.     Defendant committed a deceptive act or practice by making the unsupported labeling representations set forth in detail above that impliedly represented to consumers, and supported the claim, that the Product was the nutritional equivalent of two servings of fruit.

43.     These deceptive acts and practices have a capacity, tendency, and/or likelihood to deceive or confuse reasonable consumers such as Plaintiff and members of the Class; consumers of the Product had a good faith basis for believing the Product was unique in its nutritional properties.

44.     Defendant also committed an unlawful business practice by violating the FAL and CLRA as set forth in detail below. These violations serve as predicate violations of this prong of the UCL.

45.     As the result of these unfair, deceptive and/or unlawful business practices Plaintiff and members of the Class have suffered actual harm in that they have been deprived of the benefit of their bargain and have spent money purchasing the Product at a price premium when the Product actually had less value than was reflected in the price they paid for the Product.

46.     As a purchaser and consumer of Defendant's Product, and as a member of the general public in California who purchased and used the Product, Plaintiff is entitled to and does bring this class action seeking all available remedies under the UCL.

47.     Defendant's labeling practices, as set forth above, were intended to promote the sale of the Product and constitute unfair, deceptive and/or unlawful

business practices within the meaning of California Bus. & Prof. Code § 17200 et seq.

48.     Pursuant to California Bus. & Prof. Code § 17203, Plaintiff, on behalf of herself and members of the general public, seeks an order of this Court requiring Defendant to restore to Plaintiff and Class members all monies that Defendant acquired as the result of any act or practice set forth herein that is determined by this Court to be an unfair, deceptive and/or unlawful business act or practice within the meaning of the UCL.

49.     Plaintiff and members of the general public may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

50.     As a result of Defendant's violations of the UCL, Plaintiff and the Class are entitled to restitution for out-of-pocket expenses and economic harm.

51.     Pursuant to Civil Code § 3287(a), Plaintiff and Members of the Class are further entitled to pre-judgment interest as a direct and proximate result of Defendant's wrongful conduct. The amount on which such interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and members of the Class are entitled to interest in an amount according to proof.

**VII. SECOND CAUSE OF ACTION:**

**VIOLATIONS OF BUS. & PROF. CODE §17500 ET SEQ.**

52.     Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this First Amended Complaint.

53.     In violation of California Bus. & Prof. Code §17500, Defendant has disseminated, or caused to be disseminated, deceptive advertising making the unsupported representations set forth in detail above that impliedly represented to consumers, and supported the claim, that the Product was the nutritional equivalent of two servings of fruit.

54.     Defendant's labeling representations for the Product were by their very nature unfair, deceptive and/or unlawful within the meaning of California Bus. & Prof. Code §17500 et seq. The representations are likely to deceive, and continue to deceive,

reasonable consumers such as Plaintiff and members of the Class.

55.     In making and disseminating the statements alleged herein, Defendant knew or should have known that the statements were misleading, and acted in violation of California's Bus. & Prof. Code §17500 et seq.

56.     As a direct and proximate result of Defendant's wrongful conduct, Plaintiff and the Class Members have suffered actual harm in that they have been deprived of the benefit of their bargain and have spent money purchasing the Product at a price premium when the Product actually had less value than was reflected in the price they paid for the Product.

57.     Pursuant to Bus. & Prof. Code § 17535, Plaintiff, on behalf of herself and members of the general public, seeks an order of this Court requiring Defendant to restore to Plaintiff and Class members all monies that Defendant acquired as the result of any deceptive act and/or practice set forth herein that is determined by this Court to violate the FAL.

58.     As a result of Defendant's violations of the FAL, Plaintiff and the Class are entitled to restitution for out-of-pocket expenses and economic harm.

59.     Pursuant to Civil Code § 3287(a), Plaintiff and Members of the Class are further entitled to pre-judgment interest as a direct and proximate result of Defendant's wrongful conduct. The amount on which such interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and Members of the Class are entitled to interest in an amount according to proof.

## VIII. THIRD CAUSE OF ACTION:
## BREACH OF EXPRESS WARRANTY

60.     Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this First Amended Complaint.

61.     Plaintiff, and each member of the Class, formed a contract with Defendant at the time Plaintiff and the other members of the Class purchased the Product. The terms of that contract include the promises and affirmations of fact made by and implied

by Sunny Delight on its Product labels, set forth in detail above, and through its marketing campaign. The Product labeling/advertising constitutes express warranties, which became part of the basis of the bargain, and are part of a standardized contract between Plaintiff and the members of the Class on the one hand, and Sunny Delight on the other.

62.   All conditions precedent to Sunny Delight's liability under this contract, including notice, have been performed on behalf of Plaintiff and the Class.

63.   Sunny Delight breached the terms of this contract, including the express warranties, with Plaintiff and the Class by not providing a product which could provide the benefits promised, as set forth in detail above.

64.   As a result of Sunny Delight's breach of its contract and warranties, Plaintiff and the Class have been damaged in the amount of the purchase price of the Product at issue.

### IX. FOURTH CAUSE OF ACTION:
### FOR VIOLATIONS OF THE CLRA

65.   Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this First Amended Complaint.

66.   This cause of action is brought pursuant to the CLRA.

67.   Plaintiff and each member of the Class are "consumers" within the meaning of Civil Code §1761(d).

68.   The purchases of the Product by Plaintiff and each member of the Class were and are "transactions" within the meaning of Civil Code §1761(e).

69.   Defendant's marketing, promotion, and sales of the Product within California, as alleged herein, violated and continues to violate the CLRA in at least the following respects as set forth in detail above:

a.   In violation of Civil Code §1770(a)(5), Defendant represented that the Product has characteristics, ingredients, uses, and benefits which it does not have;

b.    In violation of Civil Code §1770(a)(7), Defendant represented that the Product is of a particular standard, quality, or grade, which it is not; and

c.    In violation of Civil Code §1770(a)(9), Defendant advertised the Product with an intent not to sell the Product as advertised.

70.    Plaintiff seeks and is entitled to equitable relief in the form of an order:

a.    Enjoining Defendant from continuing to engage in any practice determined by this Court to violate the CLRA;

b.    Requiring Defendant to make full restitution of all monies wrongfully obtained as a result of the conduct described above;

c.    Requiring Defendant to disgorge all ill-gotten gains flowing from the conduct described above; and

d.    Enjoining Defendant from such deceptive business practices in the future.

71.    Plaintiff, by and through counsel, notified Defendant in writing of the particular violations of Section 1770 of the CLRA and demanded that it take certain corrective actions within the period prescribed by the CLRA for such demands. It did not do so.

72.    Therefore, Plaintiff amend this pleading to request statutory damages, actual damages, plus punitive damages, interest and attorneys' fees as authorized by Section 1780(a) of the CLRA.

73.    Regardless of an award of damages, however, Plaintiff seeks and is entitled to, pursuant to Section 1780(a)(2) of the CLRA, an order for the equitable relief described above, as well as costs, attorney's fees and any other relief which the Court deems proper.

## X. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for a judgment:

A.      Certifying the Class and any subclass as requested herein;

B.      Awarding restitution to Plaintiff and California purchasers of the Product, restoring all monies acquired by Defendant through any act or practice found to have been in violation of the UCL, FAL and/or CLRA, as well as pre-judgment interest thereon;

C.      Awarding to Plaintiff and California purchasers of the Product disgorgement of all ill-gotten gains acquired by Defendant through any act or practice found to have been in violation of the CLRA;

D.      Awarding damages to Plaintiff and Class members for Defendant's breach of express warranties;

E.      Awarding Plaintiff and California purchasers of the Product, actual, statutory and punitive damages under the CLRA;

F.      Awarding attorneys' fees pursuant to, inter alia, Section 1780(d) of the CLRA and Code of Civil Procedure §1021.5; and

G.      Providing such further relief as may be just and proper.

## XI. JURY DEMAND

Plaintiff respectfully demands a trial by jury on all issues so triable.

Respectfully submitted,
HEWELL LAW FIRM

Dated: May 22, 2011

By: _/s/ Harold M. Hewell_____
       Harold M. Hewell

Robert Chaffin
THE CHAFFIN LAW FIRM
4265 San Felipe, Suite 1020
Houston, Texas 77027
(*To apply as counsel pro hac vice*)

Howard W. Rubinstein
THE LAW OFFICES OF HOWARD W. RUBINSTEIN
PO Box 4839
Aspen, Colorado 81612
(*To apply as counsel pro hac vice*)
*Attorneys for Plaintiff*

# LIST OF EXHIBITS

| Exhibit | Description | Pages |
|---------|-------------|-------|
| A | "NAD Recommends Sunny Delight Discontinue Certain Claims for Fruit$_2$O Beverages, Following Campbell Challenge," *NAD® News,* June 23, 2010, http://www.nadreview.org/docView.aspx?DocumentID=8092&DocType=1, retrieved December 20, 2010. | 20-21 |

**Exhibit A**

# NAD® News

Contact: Linda Bean
212-705-0129

For Immediate Release

**NAD RECOMMENDS SUNNY DELIGHT DISCONTINUE CERTAIN CLAIMS FOR
FRUIT2O BEVERAGES, FOLLOWING CAMPBELL CHALLENGE**

*New York, New York – June  23, 2010 –* The National Advertising Division of the Council of Better Business Bureaus has recommended that Sunny Delight modify or discontinue certain advertising claims for its Fruit$_2$O beverages.

NAD, the advertising industry's self-regulatory forum, reviewed labeling and advertising claims, following a challenge by Campbell Soup Company.

NAD reviewed claims that included:

- *Fruit$_2$O essentials water beverages contain "5 [or 4] nutrients equal to 2 servings of fruit."*
- *"Fortified with nutrients equal to 2 servings of fruit."*
- *"Each Fruit$_2$O essentials flavor is fortified with nutrients like its fruits."*
- *"The wonders of fruit. The refreshment of water."*

The Fruit$_2$O essentials water beverages line includes six flavor varieties that feature multiple-fruit names, (such as "Cranberry Raspberry") and images of the fruits along with the claim "5 [or 4] nutrients equal to 2 servings of fruit."  The side panel of the product label identifies four or five "key nutrients" found in two servings of the fruits.

The challenger argued that while the beverages are fortified with the nutrients found in their namesake fruits, many of the nutrients added to the waters are present in very small amounts in those fruits or are not the most prominent or signature nutrients for which the fruits are known. Further, the challenger contended that to the extent the signature nutrients are delivered, they are, in many cases, present at a level that is significantly less than what a consumer would get by eating the promised two servings of the fruit themselves.

The advertiser maintained that its advertising communicates the unique benefits of the product in a manner that helps consumers understand the amounts of those nutrients that are contained in the water. The advertiser asserted that it took care in creating the labels and advertisements to ensure that consumers understood not only which nutrients the water contains in amounts equal to two servings of the depicted fruit, but also to provide sufficient clarifying information so that reasonable consumers understand the limits of the water's nutritional contents.

At the outset of NAD's inquiry, the advertiser stated that it had discontinued challenged print advertising, a measure NAD believed to be appropriate because consumers could reasonably understand the advertising to be claiming a nutritional equivalence between varieties of the water product and two servings of fruit.

NAD questioned the sufficiency of the attempt to limit the main claim on the product label by stating in additional text that the nutrients equal to two servings of fruit are "key" nutrients. NAD noted that because the advertising makes a claim of "equal to 2 servings of fruit" consumers may reasonably expect the enhanced product to contain certain nutrients, in the same quantities as fruit.  Because this implied message was not supported, NAD recommended that the "…equal to 2 servings of fruit claims" be discontinued.

NAD further determined that within the context of the challenged advertising, the tagline "The wonders of fruit. The refreshment of water," contributed to the implied message that the water

product was nutritionally equivalent to actual servings of fruit. NAD recommended that the advertising be modified or discontinued to avoid conveying this unsupported message.

In its advertiser's statement, Sunny Delight took issue with certain of NAD's findings. However, the company said, it has "made changes to its advertising campaign and will implement additional revisions, to the full extent possible, in any remaining advertising consistent with NAD's guidance."

"Sunny Delight appreciates the opportunity to participate in the NAD self-regulatory process and, as a strong partner and participant in the advertising community, will continue to take the NAD's guidance into serious consideration in developing future campaigns," the company said.

### 

*NAD's inquiry was conducted under NAD/CARU/NARB Procedures for the Voluntary Self-Regulation of National Advertising. Details of the initial inquiry, NAD's decision, and the advertiser's response will be included in the next NAD/CARU Case Report.*

**About Advertising Industry Self-Regulation:** The National Advertising Review Council (NARC) was formed in 1971. NARC establishes the policies and procedures for the National Advertising Division (NAD) of the Council of Better Business Bureaus, the CBBB's Children's Advertising Review Unit (CARU), the National Advertising Review Board (NARB) and the Electronic Retailing Self-Regulation Program (ERSP).

The NARC Board of Directors is composed of representatives of the American Advertising Federation, Inc. (AAF), American Association of Advertising Agencies, Inc., (AAAA), the Association of National Advertisers, Inc. (ANA), Council of Better Business Bureaus, Inc. (CBBB), Direct Marketing Association (DMA), Electronic Retailing Association (ERA) and Interactive Advertising Bureau (IAB).  Its purpose is to foster truth and accuracy in national advertising through voluntary self-regulation.

NAD, CARU and ERSP are the investigative arms of the advertising industry's voluntary self-regulation program. Their casework results from competitive challenges from other advertisers, and also from self-monitoring traditional and new media. NARB, the appeals body, is a peer group from which ad-hoc panels are selected to adjudicate NAD/CARU cases that are not resolved at the NAD/CARU level. This unique, self-regulatory system is funded entirely by the business community; CARU is financed by the children's advertising industry, while NAD/NARC/NARB's primary source of funding is derived from membership fees paid to the CBBB. ERSP's funding is derived from membership in the Electronic Retailing Association. For more information about advertising industry self-regulation, please visit www.narcpartners.org.